IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

PENNSYLVANIA HIGHER EDUCATION
ASSISTANCE AGENCY,

       Plaintiff,

v.              CIVIL ACTION NO. 2:14-cv-00748

WILLIAM G. HOH,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

  Pending before the Court is Plaintiff's Motion to End Stay, in which Plaintiff requests that the Court lift the stay in this matter and reconsider its prior ruling denying Plaintiff's Motion for Summary Judgment. (ECF No. 21.) For the reasons discussed herein, the Court **GRANTS** Plaintiff's Motion to End Stay, (*id.*), **LIFTS** the stay in this case, **RECONSIDERS** its April 13, 2015 Memorandum Opinion and Order in this case (the "April 13, 2015 Opinion"), (ECF No. 20), and **GRANTS** Plaintiff's Motion for Summary Judgment, (ECF No. 12).

*I. Background*

  This is an action for a judgment against Defendant arising out of a student loan that is allegedly in default. On July 25, 1988, Defendant signed a promissory note (the "Promissory Note") to obtain a student loan from Plaintiff through the Health Education Assistance Loan Program ("HEAL"), with a principal sum of $20,000 (the "Student Loan"). (ECF No. 13 at 1; *see* ECF No. 18, Ex. A at 4–5 (constituting the Promissory Note); ECF No. 18, Ex. A (providing the

1

sworn affidavit of Christine Mayersky, a Loans Operations Department Supervisor with an entity associated with Plaintiff, in which she states that that defendant "obtained a [HEAL] loan from Plaintiff in the principal sum of $20,000" on July 25, 1988).) The Promissory Note provides that the repayment schedule for the Student Loan "will require monthly payments." (ECF No. 18, Ex. A at 4.) The Promissory Note also states that the Student Loan "may be declared in default" if Defendant "do[es] not make payments when due." (*Id.*)

The HEAL Loan is guaranteed by the United States Department of Health and Human Services ("HHS") "and is governed by the Public Health Service Act (42 U.S.C. § 292, et seq.), the [HEAL] regulations (42 C.F.R. §[] 60.1, et seq.) . . . , and [HEAL] Policy Memoranda." (*Id.* ¶ 4.) "[Plaintiff] is a statutorily-created instrumentality of the Commonwealth of Pennsylvania," (ECF No. 1 ¶ 1 (citing 24 Pa. Cons. Stat. §§ 5101–5199.9)), and "is the owner and servicer of" the Student Loan, (ECF No. 18, Ex. A ¶ 5).

"On August 16, 1988, $11,256.00 was disbursed to [Defendant] on the Student Loan." (ECF No. 1 ¶ 9; ECF No. 13 at 2; *see* ECF No. 6 ¶ 4 (providing that Defendant admits to Plaintiff's allegation in the Complaint that $11,256.00 was disbursed to Defendant on August 16, 1988 pursuant to the Student Loan).) "From 1993 through 2013," Defendant was "granted twelve deferments and forbearances with respect to the [Student Loan]." (ECF No. 18, Ex. A ¶ 9.) "On or before May 19, 2013, [Defendant] became delinquent on the Student Loan . . . ." (ECF No. 1 ¶ 11; ECF No. 13 at 2.) "[Defendant] has made no payments on the [Student Loan] since prior to May 19, 2013." (ECF No. 13 at 2; ECF No. 6 ¶ 5 ("Defendant admits . . . that he has made no payments on [the Student Loan] since before May 19, 2013 . . . .").)

2

On January 8, 2014, Plaintiff filed the single-count Complaint, in which Plaintiff alleges that Defendant defaulted on the Student Loan. (ECF No. 1.) In the Complaint, Plaintiff seeks "the amount of $12,261.63 of principal, interest, and late fees plus a per diem of $0.92 . . . from December 13, 2003," as well as applicable attorney fees. (*Id.* at 3.) Sometime between the filing of the Complaint and March 6, 2014, Defendant notified Plaintiff that he is totally and permanently disabled. (*See* ECF No. 18, Ex. A ¶ 13.) On March 6, 2014, Plaintiff mailed a correspondence in response to Defendant's assertion of total and permanent disability, which stated that the recipient "must complete the enclosed forms and provide additional documentation within 60 days from the date of this letter" and included attached "Physician's Certification of Borrower's Total and Permanent Disability" and "Medical Release" forms. (*Id.* at 8–11.) As of September 2, 2014, Plaintiff did not receive a "return[ed] completed and signed Certification of Borrower's Total [and] Permanent Disability form." (*Id.* ¶ 14.)

Defendant filed his Answer to the Complaint, by counsel, on March 10, 2014. (ECF No. 6.) In his Answer, Defendant admits that he signed the Promissory Note and Plaintiff is the owner of the Student Loan. (*See id.* ¶ 2.) However, Defendant asserts in his Answer that the Student Loan is not in default "due to [Defendant's] total and permanent disability, which under the terms of the agreement cancels this indebtedness." (*Id.* ¶ 7.)

On September 2, 2014, Plaintiff filed its Motion for Summary Judgment. (ECF No. 12.) To date, Defendant has not filed an opposition to this motion.

The Court subsequently entered the April 13, 2015 Opinion, in which it found that there were "questions of fact as to whether Defendant received" the required "Certification of Borrower's Total & Permanent Disability" and "Medical Release" forms Plaintiff purportedly

3

included with its March 6, 2014 correspondence. (ECF No. 20 at 7–8.) The Court then denied the Motion for Summary Judgment, stayed this case, and provided the following order:

> The Court directs Plaintiff to file a motion to end the stay . . . within thirty days of the end of the sixty-day period initiated by Plaintiff's mailing of a new letter to Defendant enclosing the appropriate materials related to Defendant's claim of permanent and total disability—but only if Defendant fails to provide any materials to Plaintiff in response to this correspondence . . . .

(*Id.* at 9 (emphasis omitted).)

On June 26, 2015, Plaintiff filed the Motion to End Stay. (ECF No. 21.) In this motion, Plaintiff asserts that it mailed "letter[s] enclosing a Disability Discharge Application"—consisting of the "Physician's Certification of Borrower's Total and Permanent Disability and the Medical Release forms"—to Defendant on April 21, 2015. (*Id.* ¶¶ 1–5 (emphasis omitted).) Plaintiff attached copies of these letters, the enclosed application materials, and electronic delivery confirmations to the Motion to End Stay. (*See id.*, Exs. A & B (providing April 21, 2015 letters purportedly from American Education Services to Defendant, as well as delivery confirmations).)[1] Plaintiff also asserts that "[o]n April 28, 2015, counsel for [Plaintiff] mailed to counsel for . . . Defendant correspondence enclosing [Plaintiff's] April 21 letter along with the Disability Discharge Application." (ECF No. 21 ¶ 6.) Plaintiff similarly attached a copy of this letter and the attached materials to its Motion to End Stay. (*See id.*, Ex. C.)

Defendant has not filed an opposition to the Motion to End Stay to date. As such, this motion is ready for disposition.

---

[1] Plaintiff filed an affidavit in which an employee of an entity associated with Plaintiff states that "American Education Services" is "a fictitious name used by [Plaintiff] . . . to conduct its loan servicing operations." (ECF No. 18, Ex. A ¶ 1.)

## II. *Motion for Reconsideration*

In the Motion to End Stay, Plaintiff requests both that the Court lift the stay in this matter and reconsider its April 13, 2015 Opinion denying Plaintiff's Motion for Summary Judgment. (ECF No. 21 ¶ 9.) For the following reasons, the Court finds that reconsideration of its April 13, 2015 Opinion is appropriate.

Plaintiff does not cite any authorities indicating the legal basis for its request for reconsideration. (*See* ECF No. 21.) The Court's April 13, 2015 Opinion was an interlocutory order, as it did not resolve all claims against all parties. *See, e.g.*, *Saint Annes Dev. Co. v. Trabich*, 443 F. App'x 829, 832 (4th Cir. 2011) ("[T]he district court's summary judgment order, which did not resolve all claims against all parties, was interlocutory and thus subject to revision at any time." (citation omitted)). The Court therefore construes Plaintiff's request as a motion for reconsideration under Federal Rule of Civil Procedure 54(b), which governs reconsideration of interlocutory orders and opinions. *See, e.g.*, *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1470 (4th Cir. 1991) (finding that the district court correctly considered a motion for reconsideration "of a prior interlocutory order" under Rule 54(b)); *TomTom, Inc. v. AOT Sys. GmbH*, 17 F. Supp. 3d 545, 546 (E.D. Va. 2014) (stating that Rule 54(b) "governs reconsideration of interlocutory" orders). Federal Rule of Civil Procedure 54(b) provides the following, in pertinent part:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

"Notwithstanding that precept, it is improper to file a motion for reconsideration simply to ask the Court to rethink what the Court had already thought through―rightly or wrongly." *In re C.R. Bard, Inc.*, 948 F. Supp. 2d 589, 649 (S.D. W. Va. 2013) (citation omitted).

In the Fourth Circuit, "final orders . . . trigger heightened standards for reconsideration" under Federal Rules of Civil Procedure 59(e) and 60(b). *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003) (citations omitted). "This is understandable, as significant time and resources are often invested in arriving at a final judgment." *Id.* On the other hand, "[m]otions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment." *Id.* (citation omitted); *see also TomTom, Inc.*, 17 F. Supp. 3d at 546 ("The Fourth Circuit has made clear that the standards governing reconsideration of final judgments are not determinative of a Rule 54(b) motion . . . ." (citing *Am. Canoe Ass'n*, 326 F.3d at 515)). "This is because a district court retains the power to reconsider and modify its interlocutory judgments . . . at any time prior to final judgment when such is warranted." *Am. Canoe Ass'n*, 326 F.3d at 514–15 (citation omitted); *see also Fayetteville Inv'rs*, 936 F.2d at 1469 ("An interlocutory order is subject to reconsideration at any time prior to the entry of a final judgment.").

Nonetheless, "this [D]istrict has been 'guided by the general principles of Rules 59(e) and 60(b)' in determining whether a Rule 54(b) motion should be granted." *W.W. McDonald Land Co. v. EQT Prod. Co.*, 983 F. Supp. 2d 790, 819 (S.D. W. Va. 2014) (quoting *Shewsbury v. Cyprus Kanawha Corp.*, 183 F.R.D. 492, 493 (S.D. W. Va. 1998)); *cf. S. Coal Corp. v. IEG Pty, Ltd.*, CIVIL NO. 2:14cv617, 2016 WL 393954, at *1 (E.D. Va. Jan. 29, 2016) (noting that "many courts in this circuit have appropriately considered th[e] factors" governing reconsideration of final

6

judgments "in guiding the exercise of their discretion under Rule 54(b)" (citations omitted)). "The Fourth Circuit has recognized three grounds for amending a judgment: '(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice.'" *Norfolk S. Ry. Co. v. Nat'l Union Fire Ins. of Pittsburgh, PA*, 999 F. Supp. 2d 906, 919 (S.D. W. Va. Mar. 31, 2014) (quoting *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)). "Motions to reconsider 'may not be used, however, to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance.'" *W.W. McDonald Land Co.*, 983 F. Supp. 2d at 819 (quoting *Pac. Ins. Co.*, 148 F.3d at 403). "Similarly, if a party relies on newly discovered evidence in its . . . motion [for reconsideration], the party 'must produce a legitimate justification for not presenting the evidence during the earlier proceeding.'" *Pac. Ins. Co.*, 148 F.3d at 403 (quoting *Small v. Hunt*, 98 F.3d 789, 798 (4th Cir. 1996)).

"In general reconsideration . . . is an extraordinary remedy which should be used sparingly." *Id.* (citation omitted); *see also TomTom, Inc.*, 17 F. Supp. 3d at 546 (noting that valid grounds for a court to reconsider its previous rulings "rarely arise and the motion to reconsider should be equally rare" (citation omitted)). Ultimately, the "power" to reconsider its interlocutory orders "is committed to the discretion of the district court." *Am. Canoe Ass'n*, 326 F.3d at 515 (citation omitted); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983) ("[E]very order short of a final decree is subject to reopening at the discretion of the district judge.").

7

In its April 13, 2015 Opinion, the Court denied Plaintiff's Motion for Summary Judgment because "[t]here [were] questions of fact as to whether Defendant received" the correspondence containing the required "Physician's Certification of Borrower's Total and Permanent Disability" form. (ECF No. 20 at 7–9.) As the Court noted, "[i]f Defendant never received this correspondence, then he never had an opportunity to respond with the requisite information and the established administrative procedures could not occur." (*Id.* at 8.) The Court then directed Plaintiff to request a lift of the stay after it remedied this potential procedural defect. (*See id.* at 9.) In short, the Court denied Plaintiff's Motion for Summary Judgment on procedural grounds and provided both parties an opportunity to remedy these procedural defects. (*See id.* at 7–9.)

In support of its Motion to End Stay, Plaintiff represents that it mailed the requisite materials to Plaintiff on April 21, 2015. (*See* ECF No. 21 ¶¶ 2–3.) Plaintiff attached copies of these materials to the Motion to End Stay, as well as electronic shipping confirmation forms demonstrating the delivery of these materials. (*See id.*, Ex. 2.) The recipient address for these materials―112 Yorktowne Place, Charleston, West Virginia―conforms to Defendant's address, as provided in the Complaint, (*compare id.* at 5 (providing the recipient address for one of Plaintiff's April 21, 2015 mailings), *with* ECF No. 1 ¶ 2 (providing Defendant's address, as listed in the Complaint)), and admitted by Defendant in his Answer, (*see* ECF No. 6 ¶ 2). Additionally, Plaintiff represents that it mailed copies of the same materials to Defendant's counsel of record in this case on April 28, 2015, (*see* ECF No. 21 ¶ 6), and also attached copies of these materials to the Motion to End Stay, (*see id.*, Ex. 3).

The Court finds that these new materials are highly relevant to the Motion for Summary Judgment and adequately address the Court's concerns, as provided in its April 13, 2015 Opinion.

8

(*See* ECF No. 20 at 7–9.) The Court therefore also finds that the extraordinary remedy of reconsideration is warranted in this case. As such, the Court will now reconsider its April 13, 2015 Opinion denying Defendant's Motion for Summary Judgment.

### *III. Summary Judgment*

In its unopposed Motion for Summary Judgment, Plaintiff argues that it "is entitled to summary judgment as a matter of law because it has established, and [Defendant] has conceded, that the [Student Loan] is valid and enforceable" and Defendant has defaulted on the Student Loan. (ECF No. 13 at 5.) For the reasons provided below, the Court agrees with Plaintiff's position and finds that it is entitled to summary judgment.

**A.     Legal Standard**

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. That rule provides that a court should grant summary judgment if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is inappropriate, however, if there exist factual issues that reasonably may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). When construing such factual issues, the Court must view the evidence "in the light most favorable to" the party opposing summary judgment. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Liberty Lobby*, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." (citation omitted)).

The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). Once the moving party has met its burden, the burden shifts to the nonmoving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If a party fails to make a sufficient showing on one element of that party's case, the failure of proof "necessarily renders all other facts immaterial." *Id.* at 323.

"[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 256. "The mere existence of a scintilla of evidence" in support of the nonmoving party is not enough to withstand summary judgment; the judge must ask whether "the jury could reasonably find for the plaintiff." *Id.* at 252.

A party's failure to respond to a motion for summary judgment, in and of itself, does not show that the moving party is entitled to judgment as a matter of law. *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993). "Thus, the court, in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." *Id.*; *see also* Fed. R. Civ. P. 56(e) ("If a party . . . fails to properly address another party's assertion of fact . . . , the court may . . . grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it . . . .").

**B.    Discussion**

Plaintiff contends that Defendant signed the Promissory Note, Plaintiff owns the Student Loan, and Defendant is in default. (ECF No. 13 at 4–5.) As such, Plaintiff argues it is entitled to summary judgment. (*Id.*)

"To establish a prima facie case of a student loan default, the [plaintiff] must prove three elements: (1) the defendant signed a promissory note for a student loan; (2) the [plaintiff] owns the promissory note signed by the defendant[;] and (3) the defendant has defaulted on the note." *United States v. White*, No. 5:08–CV–348–F, 2009 WL 3872342, at *2 (E.D.N.C. Nov. 18, 2009) (citations omitted); *see also United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001) (providing similar elements); *HICA Educs. Loan Corp. v. Assadi*, Civil Action No. WMN–12–216, 2012 WL 3156828, at *2 n.1 (D. Md. Aug. 1, 2012) (citation omitted) (same). "After the [plaintiff] meets this burden, the burden then shifts to the alleged debtor to prove 'the non-existence, extinguishment, or variance in payment of an obligation.'" *White*, 2009 WL 3872342, at *2 (quoting *Guillermety v. Sec'y of Educ. of U.S.*, 341 F. Supp. 2d 682, 688 (E.D. Mich. 2003)); *see also United States v. Petroff-Kline*, 557 F.3d 285, 290 (6th Cir. 2009) ("Once . . . a prima facie case is established, defendant has the burden of proving the nonexistence, extinguishment or variance in payment of the obligation." (citation omitted)). *See generally Lawrence*, 276 F.3d at 197 ("Because the [plaintiff] produced sufficient evidence to satisfy its summary judgment burden, the burden shifted to [the defendant] to 'set forth specific facts showing that there is a genuine issue for trial,' not just to 'rest upon the mere allegations or denials of the adverse party's pleading.'" (quoting *Resolution Tr. Corp. v. Camp*, 965 F.2d 25, 29 (5th Cir. 1992))).

11

In support of its Motion for Summary Judgment, Plaintiff provided the Promissory Note, which states that Plaintiff is the "lender" and is signed by Defendant as the "borrower." (ECF No. 18, Ex. A at 4–5.) Plaintiff also provided the sworn affidavit of a loans supervisor for an entity associated with Plaintiff, in which the affiant states that Defendant entered into the Promissory Note. (*Id.* at 1.) In his Answer to the Complaint, Defendant admits that he signed the Student Loan documents and Plaintiff is the present owner of the debt. (*See* ECF No. 6 ¶¶ 2 & 4.) As such, the issues of whether Defendant signed the Promissory Note and Plaintiff owns the Student Loan are not in dispute. *Cf. United States v. Kortz*, Civil Action No. 3:10–CV–72–S, 2011 WL 3490087, at *1 (W.D. Ky. Aug. 9, 2011) (finding that the plaintiff adequately demonstrated that the defendant signed the debt instrument where the plaintiff "provided the court with a copy of a promissory note signed by [the defendant]" and the defendant admitted that she owed the debt).

Regarding the default element, Defendant admits that "he has made no payments on this [Student Loan] since before May 19, 2013." (ECF No. 6 ¶ 5.) However, in his Answer to the Complaint, Defendant contends that he is permanently and totally disabled and—under the terms of the loan documents—the debt is therefore cancelled. (*Id.* at 2 ("Under the terms of the loan agreement, if Defendant became totally and permanently disabled, the unpaid indebtedness on the note shall be canceled in accordance with applicable federal statutes and regulations. Defendant has become totally and permanently disabled, and, therefore, the indebtedness is canceled.").)

The debt instrument in this case provides, in relevant part, that "[i]f [the borrower] die[s] or become[s] totally and permanently disabled, [his] unpaid indebtedness on this [Promissory Note] shall be cancelled in accordance with applicable Federal statute[s] and regulations." (ECF No. 18, Ex. A at 5); *see also* 42 C.F.R. § 60.8(a)(10) (stating that, in the context of this type of

student loan, "[t]he borrower's total loan obligation is cancelled in the event of death or total and permanent disability"). The implementing regulations pertaining to this type of student loan state that "[a] borrower is totally and permanently disabled if he or she is unable to engage in any substantial gainful activity because of a medically determinable impairment, which the Secretary expects to continue for a long and indefinite period of time or to result in death." 42 C.F.R. § 60.39(b)(1). In *United States v. Hargrett*, the court analyzed the HHS's "policies regarding the specifics of HEAL loan discharge requests" and provided the following discussion regarding the relevant procedures:

> To be discharged due to a disability, HHS policy requires that: (1) the debtor must inform the HEAL lender/holder that he or she is disabled and request a discharge; (2) the lender/holder must forward to HHS the debtor's request for discharge based on disability and stay collection activities; (3) the lender/holder must request in writing that the debtor complete and return the Physician's Certification of Borrower's Total and Permanent Disability . . . *in addition to* providing supporting documentation within sixty days from the date of the letter; and (4) upon receiving the disability documentation from the debtor, the lender/holder must send the same to HHS for review. In the event that the debtor does *not* respond with supporting documentation within sixty days, collection activity must resume. If the lender/holder receives the Disability Form and other documentation, which is facially insufficient either in content or in timing, then HHS will attempt to get additional information. The debtor then will be given an additional thirty days to provide the information requested by HHS. If HHS has enough documented information to make a formal determination concerning the debtor's status, then all collection activities must be suspended until HHS renders the decision.[2]

---

[2] The regulations relating to this type of loan provide the following broad outline of these procedures:

> After being notified by the borrower or the borrower's representative that the borrower claims to be totally and permanently disabled, the holder of the loan may not attempt to collect on the loan from the borrower or any endorser. The holder must promptly request that the Secretary determine whether a borrower has become totally and permanently disabled. With its request, the holder must submit medical evidence no more than 4 months old that it has obtained from the borrower or the borrower's representative.

42 C.F.R. § 60.39(b)(2).

No. 04 C 2433, 2005 WL 1950669, at *2 (N.D. Ill. Aug. 11, 2005) (citations omitted); *see also* Dep't of Health & Human Servs., Lender Policy Mem. L-95-10, Permanent & Total Disability (1995) (discussing the procedures for when a borrower claims total and permanent disability).

In the Motion to End Stay, Plaintiff asserts that it mailed "a letter enclosing a Disability Discharge Application" to Defendant on April 21, 2015. (ECF No. 21 ¶¶ 2–3. *See generally id.* ¶ 1 (providing that the "Disability Discharge Application" included "the Physician's Certification of Borrower's Total and Permanent Disability and the Medical Release forms" (emphasis omitted)).) Plaintiff attached a copy of these materials to the Motion to End Stay, as well as an electronic shipping confirmation form demonstrating the delivery of these materials. (*See id.*, Ex. B.) As noted above, the recipient address for these materials conforms to Defendant's address, as provided in the Complaint, (*compare id.* at 5 (providing the recipient address for one of Plaintiff's April 21, 2015 correspondences to Defendant), *with* ECF No. 1 ¶ 2 (providing Defendant's address, as listed in the Complaint)), and admitted by Defendant in his Answer, (*see* ECF No. 6 ¶ 2). Plaintiff further represents that it mailed a copy of these materials to defense counsel on April 28, 2015, (ECF No. 21 ¶ 6), and attached a copy of this correspondence to the Motion to End Stay, (*id.*, Ex. C). Plaintiff asserts that, despite these correspondences, Defendant failed to return the completed forms regarding his alleged disability within "the allotted 60-day period." (ECF No. 21 ¶ 8.)

The Court finds that these materials adequately demonstrate that Plaintiff sent the required documentation to Defendant regarding his alleged total and permanent disability. However, the record is devoid of any indication that Defendant ever returned these completed forms to Plaintiff, or provided Plaintiff with any documentation supporting his allegation of total and permanent

disability. The Court further notes that it provided an additional opportunity for Defendant to submit these required forms when it previously denied Plaintiff's Motion for Summary Judgment on the grounds that there were material questions of fact as to whether Defendant received these forms. (*See* ECF No. 20 (constituting the Court's April 13, 2015 Opinion).) Plaintiff has now filed documentation demonstrating that Defendant received these forms, but the record indicates that Defendant failed to take advantage of this opportunity to follow the administrative procedures necessary to establish his total and permanent disability.

Based on this record, the Court finds that Defendant has failed to follow the requisite administrative steps to support his assertion of disability and collection activities on the Student Loan must resume. *See Hargrett*, 2005 WL 1950669, at *2 (providing that "[i]n the event that the debtor does *not* respond with supporting documentation within sixty days, collection activity must resume"). The Promissory Note in this case required Defendant to make monthly payments based on the parties' repayment schedule. (ECF No. 18, Ex. A at 4.) However, Plaintiff asserts—and Defendant admits—that Defendant's deferments on the Student Loan ended in 2013, (*see, e.g.*, ECF No. 6 ¶ 4 (providing Defendant's admission to the allegation that he received deferments on the Student Loan from 1993 to 2013)), but Defendant failed to make any payments on the Student Loan since May 19, 2013. (*See, e.g.*, *id.* ¶ 5 (providing Defendant's admission "that he has made no payments on this [Student Loan] since before May 19, 2013).) Under the terms of the Promissory Note, Defendant defaulted on the Student Loan when he failed to make the monthly "payments when due." (ECF No. 18, Ex. A at 4.) The Court therefore also finds that Defendant has defaulted on the Student Loan by not making payments on this debt since May 19, 2013 and

15

failing to provide the documentation to Plaintiff necessary to establish his alleged total and permanent disability.

For the foregoing reasons, the Court finds that Plaintiff has demonstrated that Defendant signed the Promissory Note, Plaintiff owns the Student Loan, and Defendant has defaulted on the Student Loan. The Court therefore finds that Plaintiff has established each of the elements for a prima facie case of a student loan default. *See, e.g.*, *United States v. White*, No. 5:08–CV–348–F, 2009 WL 3872342, at *2 (E.D.N.C. Nov. 18, 2009) (providing the three elements for a prima facie case of student loan default). The Court notes that Defendant has not raised any additional arguments as to why Plaintiff's claim fails, such as "the non-existence, extinguishment, or variance in payment of an obligation." *E.g.*, *id.*, 2009 WL 3872342, at *2 (citation omitted). Accordingly, the Court finds that Plaintiff is entitled to summary judgment on its claim that Defendant defaulted on the Student Loan.

### *IV. Conclusion*

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion to End Stay, (ECF No. 21), **LIFTS** the stay in this case, **RECONSIDERS** its April 13, 2015 Opinion, (ECF No. 20), and **GRANTS** Plaintiff's Motion for Summary Judgment, (ECF No. 12).[3]

**IT IS SO ORDERED**.

---

[3] On February 24, 2016, Plaintiff filed a Motion Requesting Hearing Date on Plaintiff's Motion to End Stay (the "Motion for Hearing"). (ECF No. 22.) The Court finds that the instant Memorandum Opinion and Order renders this motion moot. Accordingly, the Court **DENIES AS MOOT** Plaintiff's Motion for Hearing. (*Id.*)

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

      ENTER:  February 29, 2016

      _____
      THOMAS E. JOHNSTON
      UNITED STATES DISTRICT JUDGE